UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.                                                    MEMORANDUM & ORDER
                                                      16-CR-248 (WFK)
WILLIAM BATTLE,

                           Defendant.
-----------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On January 31, 2017, William Battle ("Defendant") pled guilty to a single-count indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 37 months of incarceration, 3 years of supervised release, and payment of a $100.00 special assessment.

## BACKGROUND

On May 9, 2016, the United States filed an Indictment charging Defendant with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), a Class C felony. ECF No. 6 ("Indictment"). On January 31, 2017, Defendant pled guilty before this Court, pursuant to a plea agreement, to the sole count of the Indictment. *See* Plea Agreement, ECF No. 23.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the United States Sentencing

1

Commission Guidelines Manual (the "Guidelines" or "Sentencing Guidelines") range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal quotation marks and citation omitted). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

II. Analysis

A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on July 27, 1992, in Brooklyn, New York, to the union of William Battle and Yolanda Knight. *See* Presentence Investigation Report ("PSR") ¶ 34, ECF No. 25. Defendant's parents were never married and Defendant is the only child from this relationship. *Id.* Defendant maintains a good relationship with his mother, who resides in Brooklyn and is employed by the New York Police Department. *Id.* Defendant's mother was upset when she learned of Defendant's conviction for the instant offense, but she remains supportive and visits Defendant while incarcerated. *Id.* Defendant's mother advised the United States Probation Department ("Probation") that Defendant is "a smart young man who is willing to help, but has

made some bad decisions." *Id.* ¶ 37. She notes that she believes part of the problem is Defendant never had a male figure in his life, and was in the wrong place at the wrong time with regard to the instant offense. *Id.* Defendant does not have a relationship with his father, with whom Defendant was last in contact in 2016. *Id.* ¶ 34. Defendant does not know where his father resides or if his father is employed. *Id.*

Defendant has two maternal siblings, who reside with their mother and are enrolled in school, and with whom Defendant maintains a good relationship. *Id.* ¶ 35. They are aware of Defendant's conviction and remain supportive. *Id.* Defendant has four paternal siblings who are aware of his conviction and remain supportive, and with whom Defendant maintains a good relationship. *Id.* ¶ 36. One of Defendant's paternal siblings described Defendant as having a "big heart" and willing to help those about whom he cares. *Id.* ¶ 38. Defendant has a step-mother with whom he has a good relationship and who has remained supportive. *Id.* ¶ 39.

Defendant described having a good childhood and noted he was raised under adequate financial circumstances. *Id.* He was raised by his mother and grandmother, but his grandmother passed away unexpectedly at the age of 64. *Id.* Defendant reported having a good relationship with his grandmother prior to her death. *Id.* Defendant has a daughter, age 6, with Tatiyana Richardson. *Id.* ¶ 40. Defendant and Ms. Richardson were never in a relationship but spent time together intermittently. *Id.* Ms. Richardson is aware of Defendant's conviction, but Defendant does not currently have a relationship with her. *Id.* Defendant has been absent for the majority of his daughter's life because he was incarcerated. *Id.* Defendant's mother helps support Defendant's daughter, and his daughter will occasionally visit Defendant at the MDC with Defendant's mother. *Id.* Prior to being incarcerated, Defendant and Ms. Richardson co-parented

their daughter together, and Defendant was very active in his daughter's life and visited her often. *Id.* ¶ 41.

In 2015, Defendant began a relationship with Ramika Chesson, age 25, who resides in Queens, New York, and who is employed at the Administration for Children's Services in Long Island. *Id.* ¶ 42. Ms. Chesson is aware of Defendant's conviction for the instant offense and is very supportive. *Id.*

From 1992 to 2011, Defendant resided in Brooklyn, New York with his mother and grandmother. *Id.* ¶ 43. Defendant was incarcerated from 2011 to 2015. *Id.* Between 2015 and the date of the instant incarceration, Defendant resided with his paternal siblings and step-mother. *Id.*

Defendant reported to Probation that he first consumed alcohol when he was 18, but did not consume alcohol after that because he did not like the way it made him feel. *Id.* ¶ 49. Defendant reported he first smoked marijuana when he was 24 and stated he smoked twice a week, and his last use was in February 2016. *Id.* ¶ 50. A special condition of his parole was to attend the Center for Community Alternatives in Brooklyn, New York for substance abuse treatment. *Id.* He did not report a history of use of any other illicit substances. *Id.*

Defendant received his General Education and Development (GED) diploma at the Green Correctional Facility in Coxsackie, New York. *Id.* ¶ 51. Defendant attended the ninth and tenth grades at Mary Bergtrum High School in Manhattan, New York, but left the school after being involved in an altercation with another student. *Id.* ¶ 54. Defendant attended the tenth and eleventh grades at Unity High School in Manhattan, New York, but was unable to complete high school and attain a degree due to his incarceration for a previous offense. *Id.* ¶ 52. Defendant also attended Aspirations High School in Brooklyn, New York, where he assaulted a teacher and

was arrested for the incident, as discussed below. *Id.* ¶ 53. Defendant did not discuss attending this high school with Probation. *Id.*

Defendant has been in federal custody since April 13, 2016, and was previously incarcerated from January 2012 to November 2015. *Id.* ¶ 55; *see also* April 13, 2016 Order of Detention, ECF No. 5. He does not have a history of employment other than a brief period in 2010, and was financially supported by his family. PSR ¶ 55. In the summer of 2010, Defendant was employed by Mary Baptist Church in Brooklyn, New York as a daycare worker, but left this position because it was only offered during the summer months. *Id.* ¶ 56. Defendant was unemployed from November 2015 until his arrest for the instant offense. *Id.*

Defendant was first arrested at the age of eighteen and was sentenced on April 26, 2011 to three years of probation for misdemeanor assault in the third degree with intent to cause physical injury in Kings County Supreme Court in Brooklyn, New York. *Id.* ¶ 23. According to court records, Defendant was exiting Aspirations High School in Brooklyn, New York, and was instructed by a teacher to report to the principal's office. *Id.* Defendant punched the teacher in the face. *Id.* Defendant was adjudicated a youthful offender in this case. *Id.* On August 16, 2011, Defendant was arrested and charged in Kings County Supreme Court with assault in the first degree, criminal possession of a weapon, attempted assault in the first and second degrees, and reckless endangerment in the first and second degrees, for his involvement in an August 5, 2011 shooting. *Id.* ¶ 30. This new arrest was a violation of Defendant's probation and resulted in his probation being revoked, and Defendant was re-sentenced to three months of custody on January 11, 2012. *Id.* ¶ 23. On July 10, 2014, Defendant was sentenced to five years of custody and four years of post-release supervision after being convicted of assault in the first degree in connection with the August 5, 2011 shooting. *Id.* ¶ 24. Defendant was released on parole on

November 19, 2015 after being in custody from January 18, 2012, and the maximum expiration date for his parole is November 19, 2019. *Id.* On March 17, 2016, an absconder warrant was issued. *Id.*

On February 1, 2016—the date of the instant offense—Defendant was arrested by officers of the New York Police Department ("NYPD") for his alleged involvement in a robbery and was charged with robbery in the second degree, criminal possession of a weapon in the third degree, criminal possession of a weapon on school grounds, menacing in the second degree, and criminal trespass in the second degree, but those state charges against Defendant have since been dismissed based—at least in part—on the lack of credibility of the victim who, while initially identifying Defendant as one of the robbers, has since stated that Defendant was not one of the robbers. *Id.* ¶ 31; *see also* PSR Addendum ¶ 13, ECF No. 34; Defense Objection to PSR at 2, ECF No. 32. Defendant was released by the NYPD on February 5, 2016. PSR ¶ 6.

On March 25, 2016, Defendant was arrested and charged with forgery in the second degree for possessing three counterfeit $50 bills. PSR ¶ 32. The disposition of this arrest is listed as unknown in the PSR. *Id.* Information received by Probation from the New York State Department of Corrections and Community Supervision indicates that Defendant pled guilty to a parole violation and was sentenced to twelve months of custody. *Id.* ¶ 24.

The instant federal offense arises from Defendant having knowingly and intentionally possessed a Lorcin .380 caliber semiautomatic pistol on February 1, 2016, having previously been convicted in a court of a crime punishable by a term of imprisonment exceeding one year. *Id.* ¶ 5; *see also* Indictment ¶ 1; Complaint ("Compl.") ¶¶ 2-7, ECF No. 1. Specifically, on February 1, 2016, NYPD officers responded to a call of a robbery at gunpoint and encountered Defendant inside of the building, who ran down the stairwell and exited the building upon seeing

the officers. Compl. ¶¶ 2-3. Officers chased Defendant and saw him drop what appeared to be a firearm on top of a garbage bag in an alley. *Id.* ¶ 3; PSR ¶ 5. The officers pursued Defendant and arrested him, and another officer retrieved the gun from the area where Defendant discarded it. Compl. ¶ 4; PSR ¶ 5. As stated, Defendant was initially arrested for and charged with robbery in connection with the instant federal offense of being a felon in possession in violation of 18 U.S.C. § 922(g)(2), but the robbery charges against Defendant have since been dropped. PSR ¶ 31; PSR Addendum ¶ 13; Defense Objection to PSR at 2, ECF No. 32.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. The Court takes into account Defendant's criminal history as well as his need for treatment for substance abuse.

The Court has carefully considered Defense counsel's February 26, 2018 sentencing submission as well as the supplemental exhibits thereto filed on March 8, 2018, which include a letter written by Defendant and letters of support from Defendant's family and friends. *See* Defense Sentencing Submission and Supplemental Exhibits, ECF Nos. 35 & 36. In Defense Counsel's sentencing submission, Defense counsel argues for a downward departure based on Defendant's recent rehabilitation and potential for continued rehabilitation. ECF No. 35 at 1.

Specifically, Defense counsel emphasizes Defendant's work in a college correspondence course titled "The Sociological Imagination" offered by Adams State University in Alamosa, Colorado—a course in which Defendant earned a grade of "C" while in federal custody, despite never having taken a college-level course in the past. *Id.* at 4. Defense counsel's submission focuses on Defendant's desire to improve and educate himself, and Defendant's enthusiasm for learning and sharing his newly-acquired knowledge with others around him, including his mother and other inmates. *Id.* The Court acknowledges the steps Defendant has taken towards attaining a higher education while in federal custody and encourages Defendant to continue his progress.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was convicted of one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), for which he faces a maximum term of imprisonment of ten (10) years. 18 U.S.C. § 924(a)(2). He also faces: up to three (3) years of supervised release, 18 U.S.C. § 3583(b)(2); not less than one (1) and no more than five (5) years of probation, 18 U.S.C. § 3561(c)(1); a maximum fine of $250,000, 18 U.S.C. § 3571(b)(3); and a mandatory special assessment of $100, U.S.C. § 3013. The sentence may run concurrently or consecutively to an undischarged term of imprisonment. 18 U.S.C. § 3584(a); *see also Setser v. United States*, 566 U.S. 231, 236 (2012) ("[Federal] Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings." (citations omitted)).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

The Guideline for violations of 18 U.S.C. § 922(g)(1) is United States Sentencing Commission Guidelines Manual ("USSG") § 2K2.1, which directs the Court to apply the greatest applicable base offense level.[1] USSG § 2K2.1(a)(4)(A) applies in Defendant's case, which provides a base offense level of 20 "if . . . the Defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense."[2] USSG § 2K2.1(a)(4)(A). Specifically, the Defendant has a prior felony conviction for assault in the first degree, intent to cause serious injury with a weapon, in violation of New York Penal Law § 120.10, for which he was sentenced to five years of custody on July 10, 2014. PSR ¶ 24; Compl. ¶ 7. USSG § 2K2.1 Application Note 1 explains that "[c]rime of violence" has the same definition given that term in USSG § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2, which defines "crime of violence" to include "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another . . ." All parties—Defendant, the Government, and Probation—agree with this Guidelines offense level calculation. *See* PSR Addendum ¶¶ 12, 13, 17 (providing revised calculation and concluding the adjusted subtotal offense level is 20 pursuant to USSG §

---

[1] Pursuant to USSG § 1B1.11(a), the 2016 version of the Guidelines—which is the Guidelines Manual in effect on the date of Defendant's sentencing—is used here.

[2] For purposes of applying USSG § 2K2.1(a)(4)(A), only felony convictions that receive criminal history points are considered. USSG § 2K2.1 Application Note 10.

2K2.1(a)(4)(A)); Defense Objection to PSR at 1, ECF No. 32 (agreeing with base offense level of 20 pursuant to USSG § 2K2.1(a)(4)); Gov't Sentencing Memorandum at 2, ECF No. 37 (base offense level is 20 pursuant to USSG § 2K2.1(a)(4)(A), as set forth in the plea agreement); *see also* Plea Agreement ¶ 2 (subtotal offense level of 20 prior to reductions for acceptance of responsibility).

In the original PSR, Probation calculated a higher offense level of 25 based on Defendant's alleged participation in an attempted robbery in connection with the instant offense. *See* PSR ¶¶ 7, 12-13. Probation arrived at this calculation based on the following analysis. The cross reference at USSG § 2K2.1(c)(1) provides that "if the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense . . . apply—(A) [USSG] § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above." The original PSR states "the Defendant committed Attempted Robbery in the second degree, under New York State Penal Law 110-160.10(2)(b), in connection with the possession of a firearm cited in the offense of conviction." PSR ¶ 7. Application Note 14(C) to USSG § 2K2.1 defines "another offense" to include "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, regardless of whether a criminal charge was brought, or a conviction obtained." USSG § 2X1.1(a) directs the Court to apply the Guideline for the substantive offense, plus any adjustments for any intended offense conduct that can be established with reasonable certainty. The Guideline for the substantive offense, robbery, is USSG § 2B3.1, which provides for a base offense level of 20. Additionally, because a firearm was brandished, *see* PSR ¶ 4, 5 points are added pursuant to USSG § 2B3.1(b)(2)(C), resulting in an adjusted subtotal offense level of 25,

PSR ¶ 17. The Addendum to the PSR filed by Probation on February 12, 2018 revises Probation's initial Guidelines calculation and eliminates any reference to Defendant's alleged participation in a robbery in Probation's Guidelines calculation. PSR Addendum ¶¶ 12, 13, 17, 21. Probation filed the Addendum to the PSR in response to a January 5, 2018 letter filed by Defense counsel objecting to the original PSR Guidelines calculation. *See* Defense Objection to PSR, ECF No. 32. Among other items, that letter noted "[t]he State dismissed its original attempted robbery charges . . . . In fact, the victim affirmatively claimed that Mr. Battle was not the person who tried to rob him." *Id.* at 2.

Defendant has demonstrated acceptance of responsibility for the offense and notified the Government in a timely manner of his intention to enter a guilty plea. Accordingly, the offense level is decreased by 3 levels pursuant to USSG § 3E1.1(a) & (b).

Therefore, Defendant's total offense level is 17. Given a total offense level of 17 and a criminal history category of IV,[3] the Guidelines suggest a term of imprisonment between 37-46 months. USSG ch. 5, pt. A. The Guidelines further recommend a term of supervised release of between one (1) and three (3) years, *id.* § 5D1.2(a)(2); a fine of between $10,000 and $95,000, *id.* § 5E1.2(c)(3); and payment of the costs of prosecution, *id.* § 5E1.5. Defendant is ineligible for probation under the Guidelines. *See id.* § 5B1.1 Application Note 2. The Guidelines further provide that the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to any undischarged term of imprisonment for a parole violation, *see* USSG § 5G1.3(d) & USSG § 5G1.3 Application Note 4(C), and recommend that the sentence for the instant offense be imposed consecutively to the sentence imposed for the

---

[3] Although the Plea Agreement originally contemplated a criminal history category of II, *see* Plea Agreement ¶ 2, Defendant does not refute that he in fact has a criminal history category of IV, *see* Defense Objection to PSR at 1, ECF No. 32 and Defense Sentencing Submission at 4, ECF No. 35.

11

revocation of parole, *see id.* § 5G1.3 Application Note 4(C) (noting USSG § 5G1.3(d) "applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked").

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). The Court has considered the policy statement located at USSG § 7B1.3(f), which is referenced in Application Note 4(C) to USSG § 5G1.3 and provides that "[a]ny term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release," and USSG § 7B1.3 Application Note 4, which states "it is the Commission's recommendation that any sentence of imprisonment for a criminal offense that is imposed after revocation of probation or supervised release be run consecutively to any term of imprisonment imposed upon revocation." The PSR notes that Defendant has pled guilty to a violation of his state parole and was sentenced to 12 months of custody. PSR ¶ 24; *see also* Defense Counsel October 5, 2017 Letter, ECF No. 30 (noting Defendant had been incarcerated on Riker's Island for a parole violation prior to being transferred to federal custody on or about April 12, 2016).

The Court has also considered the policy statement located at USSG § 5K2.21, which provides that "[t]he court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or

12

underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range."

### F.    The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G.    The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, *see* 18 U.S.C. § 3663.

## CONCLUSION

A sentence of 37 months of incarceration to run consecutively to any undischarged term of imprisonment for a parole violation, 3 years of supervised release, and payment of the $100.00 mandatory assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 25, and the Addendum to the Presentence Investigation Report, ECF No. 34, and imposes the special conditions of release proposed by the Probation Department with the exception of the condition forbidding the consumption of alcohol, which is not imposed.

**SO ORDERED.**

s/WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 13, 2018
      Brooklyn, New York